|  |  |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**WESTERN DISTRICT OF WASHINGTON**<br>**AT TACOMA** | |
| KYNDRA KAPPESSER<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NORTHWEST TREATMENT SERVICES, INC., a Washington Corporation,<br><br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW Plaintiff, Kyndra Kappesser, and states and alleges the following facts and causes of action against the above-named Defendant:

### JURISDICTION AND VENUE

1. This Court has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, Plaintiff is a citizen of Oregon and Defendant is a citizen of Washington.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3. Plaintiff Kyndra Kappesser is a resident of Multnomah County, Oregon. Plaintiff was an employee of Defendant Northwest Treatment Services, Inc.

4. Defendant Northwest Treatment Services, Inc. ("NWTS") is Washington corporation, whose principal place of business is in Clark County. NWTS receives Medicaid payments from Washington State in return for treatment services for sex offenders. NWTS is a "health care provider" as that term is used in the Washington Health Care Act. RCW 43.70.075; WAC 246-15-010.

## FACTUAL BACKGROUND

5. Plaintiff was hired at NWTS in September 2018 as an Adult and Adolescent Sex Offense Mental Health Therapist.

6. Patrick Connell is the director of Northwest Treatment Services, Inc.

7. Plaintiff's direct supervisor at NWTS was Jaime Pratka, a Mental Health Therapist and Clinical Supervisor.

8. Pratka was legally required to be present at group meetings for adult and adolescent sex offenders because she was the only employee at NWTS with the state and federal credentials required to hold these meetings. Plaintiff did not have these credentials.

9. In January 2019, Pratka stopped attending NWTS adolescent meetings.

10. Pratka asked Plaintiff to forge her initials on the adolescent meeting notes to create the appearance that Pratka had attended these meetings when she had not. Plaintiff questioned the practice because it sounded to her like it could be fraudulent. Pratka indicated that she would do it herself if Plaintiff refused.

11. Pratka continued to ask Plaintiff to forge her initials on the meeting notes throughout the winter and spring of 2019. Plaintiff became increasingly uncomfortable with these requests.

12. On May 1, 2019, Plaintiff spoke with her clinical supervisor who told Plaintiff that that the practice was inappropriate and potentially illegal. Plaintiff decided she would stop signing Pratka's name.

13. Sex offender clients were required to spend a minimum amount of time receiving treatment in accordance with state laws. Defendant would inaccurately report the amount of time the patients spent in therapy by exaggerating the time spent in therapy.

14. Presumably, Defendant was compensated based on the number of hours spent with a certified counselor. Therefore, in falsifying reported information and getting paid by the State based on that reported information, Plaintiff believed Defendant was committing fraud.

15. Plaintiff's clinical supervisor also told her that such behavior is illegal. She told Plaintiff that she could file a complaint with the Department of Health ('DOH').

16. On or around July 31, 2019, Plaintiff filed an anonymous complaint with the DOH about the problematic timekeeping, absence of a credentialed counselor, curriculum that included a racial slur and homophobic terminology, cell phone use, confidentiality issues, and aversion therapy that involved the use of toxic chemicals.

17. On September 23, 2019, Plaintiff received a letter from the DOH indicating that the complaint had been assigned to investigator Jessica Reiner. NWTS was also notified of the complaint.

18. On September 25, 2019, Pratka asked Plaintiff several questions about the complaint. Plaintiff believed Pratka knew she had filed the complaint and was attempting to obtain proof.

19. On September 26, 2019, NWTS had its morning adolescent meeting, which was attended by NWTS Director, Patrick Connell. Plaintiff found this odd because Connell was not normally present at NWTS on Thursdays.

20. Following the morning adolescent meeting, Connell sat Plaintiff down and told her that "due to the declining population" and "Christian Connell coming on full time," Plaintiff's hours were being cut and she would be given two daily shifts, separated by seven hours.

21. Connell was going to require Plaintiff to work from 9-11:00 a.m. and 6-8:00 p.m. two days a week, instead of 11-hour shifts, two days a week.

22. This split schedule proposed by Connell would be impossible for Plaintiff to commit to due to her commute from Portland, Oregon, which Connell knew. Plaintiff had discussed her scheduling requirements and inability to work a split shift previously.

23. Plaintiff reminded Connell that this schedule was unworkable for her. Connell exited the room without saying anything.

24. Shortly after this meeting with Connell concluded, Plaintiff texted Pratka asking to use the remainder of her sick time to take the rest of the day off because she felt ill from stress. Plaintiff also texted, "I think both you and Pat know that I won't be able to work the hours he cut me down to, so if there's a good time next week, I can come grab my last paycheck."

25. On September 27, 2019, Plaintiff contacted the DOH investigator Jessica Reiner to inform her what had happened. Reiner confirmed that the DOH had contacted NWTS on September 23, 2019, with the details of the complaint.

26. On September 27, 2019, Plaintiff received a text from Pratka requesting she submit a letter of resignation. Plaintiff responded that she would submit a letter of resignation if NWTS first provided proof that her hours had been cut, because otherwise she would not have resigned. Pratka never responded to her.

27. On October 1, 2019, Plaintiff sent a letter addressed to Pratka and Connell, stating: "As you and Patrick Connell are well aware from our past interactions around scheduling, I would not be able to work these split shifts. I can only interpret this as retaliation

for the complaint I filed against the agency…" and, "I would have appreciated the opportunity to inform my clients of this and to help ease the transition of my treatment duties, but unfortunately the immediate reduction of my hours would not allow for this."

28. Defendant purposely set the schedule with the intent to force Plaintiff's employment to end because she engaged in the protected activity of refusing to sign Pratka's name, complained about signing the name of another as being improper, and reported the improper conduct of falsifying Pratka's signature to suggest Pratka's presence at counseling sessions and related practices to the DOH.

**COUNT I: HEALTH CARE ACT WHISTLEBLOWER RETALIATION**

29. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

30. Washington law recognizes clear public policies that mental health services provided to sex offenders should be done so only by certain personnel with proper qualifications, namely certified sex offender treatment providers or certified affiliate sex offender treatment providers. RCW 9.94A.670(13); RCW 9.94A.820; RCW 18.155.010; RCW 18.155.030.

31. Plaintiff made a good faith complaint that Defendant's practice of falsifying records concerning the presence of a certified counselor at group sessions for sex offenders and the duration of the counseling sessions was an illegal practice constituting an improper quality of care by health care providers. RCW 43.70.075.

32. Plaintiff engaged in the protected activity of refusing to partake in the wrongful activity, complaining about Defendant's actions internally, and reporting Defendant's wrongful practice to the DOH.

33. In response to Plaintiff's protected activity, Defendant subjected Plaintiff to workplace reprisal or retaliatory action by reducing her work hours.

34. Defendant cut Plaintiff's hours such that they effectively and constructively discharged Plaintiff from her position of employment.

35. As a direct and proximate cause of Defendant's actions, Plaintiff was forced to resign.

36. Defendant's actions were in retaliation for Plaintiff's refusal to participate in the wrongful conduct, her internal report of the wrongful conduct, and her report to the DOH.

37. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages, including lost wages and emotional distress.

### COUNT II: MEDICAID FRAUD FALSE CLAIMS ACT RETALIATION

38. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

39. Under the Medicaid Fraud False Claims Act, it is unlawful to knowingly present or cause to be presented a false or fraudulent claim for payment or approval to a government entity or to knowingly make, use, or cause to be made or used, a false record or statement material to a false or fraudulent claim. RCW 74.66.020.

40. Plaintiff made a good faith complaint that Defendant's practice of falsifying records concerning the presence of a certified counselor at group sessions for sex offenders and the duration of the counseling sessions was an illegal practice constituting an improper quality of care by health care providers.

41. Plaintiff engaged in the protected activity of refusing to partake in the wrongful activity, complaining about Defendant's actions internally, and reporting Defendant's wrongful practice to the DOH.

42. In response to Plaintiff's protected activity, Defendant reduced Plaintiff's work hours.

43. Defendant cut Plaintiff's hours such that they effectively and constructively discharged Plaintiff from her position of employment.

44. As a direct and proximate cause of Defendant's actions, Plaintiff was forced to resign.

45. Defendant's actions were in retaliation for Plaintiff's refusal to participate in the wrongful conduct, her internal report of the wrongful conduct, and her report to the DOH, in violation of RCW 74.66.090.

46. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages, including lost wages and emotional distress.

### COUNT III:  WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

47. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

48. Washington law recognizes clear public policies that mental health services provided to sex offenders should be done so only by certain personnel with proper qualifications, namely certified sex offender treatment providers or certified affiliate sex offender treatment providers. RCW 9.94A.670(13); RCW 9.94A.820; RCW 18.155.010; RCW 18.155.030.

49. Washington law further recognizes clear public policies prohibiting the submission of false statements, representations, or claims for payment under any state medical program or to private health care payers for health care payments. RCW 48.80.030; RCW 74.09.230; RCW 74.66.020.

50. Plaintiff made a good faith complaint that Defendant's practice of falsifying records concerning the presence of a certified counselor at group sessions for sex offenders and the duration of the counseling sessions was an illegal practice constituting an improper quality of care by health care providers.

51. Plaintiff engaged in the protected activity of refusing to partake in the wrongful activity, complaining about Defendant's actions internally, and reporting Defendant's wrongful practice to the DOH.

52. In response to Plaintiff's protected activity, Defendant reduced Plaintiff's work hours.

53. Defendant cut Plaintiff's hours such that they effectively and constructively discharged Plaintiff from her position of employment. In so doing, Defendant discouraged Plaintiff's protected activity and jeopardized the above-discussed public policies.

54. As a direct and proximate cause of Defendant's actions, Plaintiff was forced to resign.

55. Defendant's actions were in retaliation for Plaintiff's refusal to participate in the wrongful conduct, her internal report of the wrongful conduct, and her report to the DOH.

56. As a direct and proximate cause of Defendant's actions, Plaintiff has suffered damages, including lost wages and emotional distress.

## REQUEST FOR RELIEF

57. Plaintiff Kyndra Kappesser requests all damages allowable under Washington law, including the following:

    a. Compensatory damages, including lost wages and emotional distress damages;

    b. Two times the amount of back pay;

    c. Pre- and post-judgment interest;

    d. Attorney fees, costs, and expenses;

    e. Any and all other and further relief this Court deems just and proper.

## JURY DEMAND

58. Plaintiff demands a trial by jury on all triable issues.

1  Dated this 18th day of August, 2021.

Respectfully submitted,

By: /s/  *Amy K. Maloney*
    Amy K. Maloney, WSBA 55610
    Matt J. O'Laughlin, WSBA 48706
    MALONEY O'LAUGHLIN, PLLC
    200 W. Mercer Street, Ste. 506
    Seattle, Washington 98119
    Tel: 206.513.7485
    Fax: 206.260.3231
    amy@pacwestjustice.com
    matt@pacwestjustice.com

ATTORNEYS FOR PLAINTIFF